J-S26027-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOSEPH BOGRAD, INDIVIDUALLY AND T/A RE/MAX ELITE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| GREENWICH INSURANCE COMPANY C/O XL SELECT PROFESSIONAL CLAIMS AND ABRAHAM MICHAEL AND ROSAMMA MICHAEL AND PECO ENERGY AND THOMAS ABRAHAM T/A PINE VALLEY AUTO TAGS | |
| Appellees | No. 2594 EDA 2015 |

Appeal from the Order Entered July 31, 2015
In the Court of Common Pleas of Bucks County
Civil Division at No: 2014-07092

BEFORE:  OLSON, STABILE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:                **FILED JUNE 20, 2016**

Joseph Bograd ("Appellant"), individually and t/a RE/MAX Elite, appeals from the July 31, 2015 order entered in the Court of Common Pleas of Bucks County denying his motion for summary judgment and granting summary judgment in favor of Appellee Greenwich Insurance Company ("Greenwich") in Appellant's declaratory judgment action against Greenwich. Appellant contends the trial court erred in granting summary judgment in

_____

[*] Retired Senior Judge assigned to the Superior Court.

favor of Greenwich and argues he is entitled to a trial to determine whether Greenwich owes him a defense and indemnification for an underlying suit in which he was named a defendant.  We find no error or abuse of discretion in the trial court's ruling and, therefore, affirm.

As the trial court explained, and as our review confirms:

[Appellant] is a licensed real estate broker who works for the RE/MAX Elite real estate agency.  Greenwich and RE/MAX entered in a Real Estate Errors and Omissions Policy (hereinafter the "Policy"), which was a Claims Made Policy, and which was effective during the period from June 1, 2013 through June 1, 2014.  The policy is implicated because on May 28, 2014, a lawsuit was filed against [Appellant] and RE/MAX in the Court of Common Pleas of Philadelphia County.  That litigation prompted [Appellant] and RE/MAX, by way of a Petition for Declaratory Judgment, to seek defense and indemnification from Greenwich under the Policy.

The underlying Complaint alleged that [Appellant] and RE/MAX served as the rental agent for a certain property in Southampton, Bucks County, PA.  The owners of that property alleged that sometime during February 2014, the tenant who had been living in the residence moved out and the electric and gas services were disconnected.  The homeowners further alleged that despite being aware of the tenant leaving and of the discontinuance of utility services, it was not until March 7, 2014 that [Appellant] informed them of this important information. On or about March 8, 2014, the homeowners discovered that their property had sustained water damage to the walls, floors, ceilings, and other parts of the dwelling, caused by a burst pipe. Count I of the underlying three (3) count Complaint alleges that the damage was caused by Appellant['s] failure to inform them in a timely fashion that the prior tenant had moved.  The homeowners assert that had they been provided with that information, they could have immediately transferred the electric and gas services to their name, and restored utility services to the property, which would have prevented the water pipe from bursting due to freezing conditions inside the home.

- 2 -

Greenwich disclaimed any coverage responsibility, asserting that the allegations of the underlying litigation involved only damages which "occurred by reason of water damage to the property" and that such damages are included within the Property Damage Exclusion of the Policy. Dissatisfied with that response, Appellant[] initiated this Declaratory Judgment action alleging that Greenwich was required to provide them a defense along with indemnity.

The matter was scheduled for trial before this [c]ourt on July 27, 2015. Following a comprehensive pre-trial conference, the parties sought rulings on their respective Motions for Summary Judgment, recognizing that such determinations could eliminate the need for a trial. Accordingly, we heard oral argument on the record, and entered our Order on July 31, 2015, finding that Greenwich did not owe a duty to defend or indemnify. Appellant[] filed a timely appeal to the Superior Court on August 24, 2015.

Trial Court Rule 1925(a) Opinion, 11/6/15, at 1-3.

Appellant complied with Pa.R.A.P. 1925(b), alleging one error complained of on appeal that included five subparts, each of which was addressed by the trial court in its Rule 1925(a) opinion. For purposes of this appeal, Appellant presents one overall issue for our consideration as follows:

Whether the lower court's grant of Summary Judgment in favor of [Greenwich] was error and whether [Appellant] is entitled to a trial on the facts of the case as to whether or not he is entitled to a defense and indemnification for an underlying lawsuit.

Appellant's Brief at 4.

When reviewing the trial court's disposition of a summary judgment motion, this Court employs the following standard:

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is

clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Szymanowski v. Brace*, 987 A.2d 717, 721–22 (Pa. Super. 2009)

(citations omitted). With regard to declaratory judgment actions, this Court

has explained:

> [T]he Declaratory Judgment Act has been invoked to interpret the obligations of the parties under an insurance contract. The proper construction of an insurance policy is resolved as a matter of law to be decided by the court in a declaratory judgment action. Hence, as with all issues of law, our review is *de novo.* Our standard of review in a declaratory judgment action is narrow. We review the decision of the trial court as we would a decree in equity and set aside factual conclusions only where they are not supported by adequate evidence. We give plenary review, however, to the trial court's legal conclusions. We are limited to determining whether the trial court clearly abused its discretion or committed an error of law.

*Swarner v. Mutual Ben. Group*, 72 A.3d 641, 644 (Pa. Super. 2013),

*appeal denied*, 85 A.3d 484 (Pa. 2014) (quotations and citations omitted).

Further:

> In actions arising under an insurance policy, our courts have established a general rule that it is a necessary prerequisite for the insured to establish that his claim falls within the coverage provided by the insurance policy. However, when the insurer relies on a policy exclusion as the basis for its denial of coverage, the insurer has asserted an affirmative defense and bears the burden of proving the exclusion.

*Erie Inc. Group v. Catania*, 95 A.3d 320, 322-23 (Pa. Super. 2014)

(citations omitted).

Here, the underlying suit is based on property damage resulting from a pipe that burst in a home for which Appellant was the rental agent. Greenwich relies on a policy exclusion that provides, "[Greenwich] will not defend or pay any claim: . . . B. based on or arising out of property damage except that this exclusion will not apply to claims *arising out of lock-box*." Greenwich Real Estate Professional Errors and Omissions Policy (the "Policy") at 7 (IV. Exclusions) (emphasis added). According to the definitions sections of the Policy, "Lock-box means a keyless entry system or similar device on property that the Insured has shown or listed for sale while the property is in the care, custody or control of the Insured." *Id.* at 5 (III. Definitions). The Policy also includes a coverage extension for a lock-box, providing in relevant part, "Subject to all other terms and conditions of this policy, this policy applies to claims *arising out of the use of a lock-box*." *Id.* at 2 (I. Insuring Agreements, D. 2. Coverage Extensions) (emphasis added).

It is not disputed that there was a lock-box on the premises for which Appellant was the rental agent and where the property damage occurred. Further, it is not disputed that the damages in question are property damages (**see** Appellant's Brief at 7) and that the Policy contains an exclusion for claims "based on or arising out of property damage." Policy at 7. The question, ultimately, becomes whether Greenwich has a duty to defend and/or indemnify Appellant based on the lock-box exception to the property damage exclusion.

In his brief, Appellant recognizes that this Court has described the court's required analysis as follows:

The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint. An insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy.

Appellant's Brief at 5 (quoting *Selective Way Ins. Co. v. Hospitality Grp. Servs., Inc.*, 119 A.3d 1035, 1046 (Pa. Super. 2015) (*en banc*) (citation omitted)).

In the underlying complaint, the plaintiffs allege that the tenant procured by Appellant notified Appellant on or about February 1, 2014, that a change in his employment necessitated that he leave the rented premises immediately. Complaint at ¶ 9. The tenant then sent emails to Appellant informing Appellant that he was disconnecting the electric and gas service. *Id.* at ¶ 10. Appellant failed to notify the owners of the home so they could take steps to transfer the service to their names in order to protect and safeguard the premises. *Id.* at ¶ 11. At some time between February 1 and February 28, 2014, the tenant vacated the premises and, on February 28, notified Appellant that the gas and electric service had been disconnected. *Id.* at ¶ 12. Appellant did not notify the homeowners that the gas and electric service had been discontinued. *Id.* at ¶ 13. On or about March 8, 2014, Appellant discovered that pipes in the premises had burst, flooding

the premises and causing "catastrophic destruction of the interior of the premises." *Id.* at ¶ 16. The homeowners had not been notified by Appellant until March 7, 2014 that the electric and gas service had been disconnected. *Id.* at ¶ 17.

In Count I of their complaint, the homeowners alleged that Appellant's carelessness and negligence was the direct, factual and proximate cause of the loss and damage they suffered (a) by failing to notify the homeowners that service was disconnected; (b) by failing to notify the homeowners that steps should be taken to restore gas and electric service to the premises; (c) by failing to notify the homeowners that the tenant had moved out and disconnected the gas and electric service; and (d) by failing to take immediate steps to transfer the gas and electric service into the homeowners' names so service could be restored. *Id.* at ¶ 20(a)-(d). As a result of Appellant's negligence, the homeowners allege they suffered damages in an amount substantially in excess of $50,000. *Id.* at ¶ 21.

Counts II and III of the homeowners' complaint assert causes of action against the utility company and against their insurance agent. Nowhere in the complaint is there any mention of a lock-box at the premises and there is no claim against Appellant for anything other than property damage to the premises resulting from pipes that burst because gas and electric service was disconnected. Again, as Appellant acknowledges, "There is no dispute that the claimed damages are for property damage." Appellant's Brief at 7.

- 7 -

However, Appellant asserts that a lock box was present at the home and that it is stipulated that "a lock box as defined in the policy was present on the door of the home." *Id.* at 8 (citing Notes of Testimony, 7/27/15, at 7-8). "So," Appellant argues, "it is submitted that the contract itself provides an exclusion [*sic*] that it will provide a defense provided any one allegation is covered under the policy." *Id.*[1]

> As the trial court observed:
>
> [Appellant] would have the [c]ourt find that the mere existence of the lock box, despite there existing no reasonable causal connection between the lock box and the underlying claim, constitutes an exception to the exclusion from coverage of any and all property damage claims. Appellant['s] position defies common sense, and we decline to employ such tortured reasoning.[4]
>
> > [4] We note here that Appellant[] did not raise any issues as to the lock box in their Declaratory Judgment Complaint. The lock box was first raised in Appellant['s] Motion for Summary Judgment, which was filed subsequent to Greenwich's filing of its Summary Judgment Motion.

Trial Court Rule 1925(a) Opinion, 11/6/15, at 8 (footnote in original). As the trial court further observed:

> The law is well-defined that when an insured who has been sued requests coverage under a policy of insurance, the insurer is

---

[1] It is important to clarify that coverage under a policy exists unless there is an applicable exclusion. However, coverage can be restored if the policy includes an exception to the exclusion. The "lock-box" *exception* to the property damage *exclusion* is what is at issue here.

required to accept all of the allegations contained in the third party's complaint as true and provide a defense if there is a chance that the injury alleged could potentially fall with the scope of the policy.  While it is undisputed that a lock box was maintained on the property, there is no reference to a lock box in the homeowner's Complaint, and there clearly is no causal connection between the lock box, utilities being disconnected, and the interior pipes subsequently freezing and bursting.[5]  Accordingly, Appellant'[s] argument here is meritless.

> [5] The result would be different if negligent use of the lock box resulted in entry to the home and vandalism or other physical damage to the property.  Such a factual scenario would implicate insurance coverage for physical damage . . . ."

*Id.* at 8-9 (citation omitted; footnote in original).  We find no error or abuse of discretion in the trial court's rejection of Appellant's assertion that the lock-box exception to the property damage exclusion applies to any allegation in the homeowner's complaint.

Appellant also suggests that the policy language is ambiguous because it is "capable of being understood in more than one sense."  Appellant's Brief at 10 (quoting *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004).  Therefore, he contends, he "is entitled to at least a defense, if not indemnification, by reason of the language of the contract."  *Id.*

As this Court has stated, "Policy provisions are ambiguous only when they are reasonably susceptible of different constructions and capable of being understood in more than one sense.  A court cannot torture the policy language to create ambiguities where none exist."  *Peters v. Nat'l Interstate Ins. Co.*, 108 A.3d 38, 43 (Pa. Super. 2014), *appeal denied*,

124 A.3d 309 (Pa. 2015) (quoting **Swarner**, 72 A.2d at 645). We find no error or abuse of discretion in the trial court's determination that the property damage exclusion is clear and unambiguous. "To find that a mere presence of a lock box required coverage for this property damage claim would convolute the plain meaning of the language in a tortured effort to find an ambiguity." Trial Court Rule 1925(a) Opinion, 11/6/15, at 9 (citation omitted).

Finally, Appellant asks us to find that he is entitled to relief because "contracts of insurance are contracts of adhesion." **Id.** at 11. Because this issue was not raised in Appellant's declaratory judgment complaint, the argument is properly considered waived. Pa.R.A.P. 302(a). However, even if not waived, we find no merit in Appellant's argument. As the trial court recognized, "[n]ot every form contract can be termed a contract of adhesion, and such a determination must be reached on an individual basis, in light of the particular circumstances and parties involved." Trial Court Rule 1925(a) Opinion, 11/6/15, at 10 (citing **Denlinger, Inc. v. Dendler**, 608 A.2d 1061, 1066-67 (Pa. Super. 1992)). Here, as the trial court noted, Appellant—trading as a commercial real estate entity—is not a party lacking the choice but to accept the terms of the contract without the ability to negotiate or understand the terms of the contract. **Id.** at 11 (citing **Denlinger**, 608 A.2d at 1066-67). We find no error of law or abuse of discretion in the trial court's determination.

We find no error or abuse of discretion in the trial court's conclusion that Greenwich does not owe Appellant a defense or indemnification for the underlying suit in which Appellant was named a defendant. Because the trial court properly granted summary judgment in favor of Greenwich, we shall affirm the July 31, 2015 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/20/2016